IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY WEEDON | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-7461 |
| | : | |
| GODLEWSKI, MARY CANINO, | : | |
| WARDEN MIKE WENEROWICZ, | : | |
| SERGEANT DAMASKY, ROBERT | : | |
| GILMORE, MARK DIALESANDRO, | : | |
| IRMA VIHILDA, DORINVA VARNER, | : | |
| CORRECTIONS OFFICER GOULD, | : | |
| J. KENNEDY and JIM BYUNAHAK | : | |

## MEMORANDUM OPINION

**Savage, J.**  February 11, 2016

Gregory Weedon, a state prisoner, brings this § 1983 action against several employees of the Pennsylvania Department of Corrections ("DOC"), most of whom reside in the Western District of Pennsylvania, for violating his rights under the Eighth and Fourteenth Amendments. He also asserts state law causes of action for negligence, intentional and negligent infliction of emotional distress, assault and battery. The claims arise out of an alleged assault that took place in this district, and the lack of medical treatment and retaliation in the Western District.

Defendant Byunghak Jin, incorrectly named in the amended complaint as Jim Byunahak, has moved to transfer venue to the Western District of Pennsylvania where he resides and where he allegedly mistreated Weedon. We conclude that the private and public interest factors of convenience and fairness weigh in favor of transfer. Therefore, we shall grant his motion.

## Factual and Procedural Background[1]

On January 7, 2013, Weedon was designated to serve his state sentence in the general population at the State Correctional Institution at Graterford ("SCI-Graterford").[2] He was later transferred to the restricted housing unit ("RHU"), where he remained until February 6, 2013.[3] Shortly after being returned to the general population, he was informed by defendant Sergeant Godlewski that he was being returned to the RHU.[4] When he questioned why he was being returned to the RHU,[5] Weedon was placed in hand restraints, pushed into a doorway, and placed into a headlock.[6] Godlewski marched Weedon down the hallway and pushed him, causing him to fall and strike his neck, back and shoulders on a door jamb.[7] While Weedon lay on the floor, Godlewski kicked his feet.[8]

Weedon was charged with misconduct.[9] At a February 22, 2013 hearing before Hearing Officer Mary Canino and Correctional Officer Damasky, Weedon was not

---

[1] The facts are recited from the amended complaint as Weedon has alleged them. For the purposes of deciding this motion, we accept them as true.

[2] Amended Complaint ¶ 32.

[3] *Id.* ¶¶ 32-33.

[4] *Id.* ¶ 34. Weedon does not allege the exact date on which he was informed he would be returned to the RHU.

[5] *Id.* ¶ 35.

[6] *Id.* ¶¶ 36-38.

[7] *Id.* ¶¶ 38-40.

[8] *Id.* ¶ 42.

[9] *Id.* ¶ 45.

permitted to present exculpatory evidence or witnesses.[10] Canino found him guilty of misconduct.[11]

As a result of the attack, Weedon suffered pain in his neck, back, shoulders and feet.[12] He continues to experience pain and muscle spasms in his neck, back and shoulders.[13] He has difficulty standing and sleeping.[14] DOC medical staff prescribed ibuprofen and Bengay muscle wraps for pain.[15] He was also given Prozac and painkillers.[16] When these medications were later discontinued, Weedon's pain and spasms increased.[17] He has also experienced weight loss.[18]

Weedon was transferred to SCI-Greene in Greene County.[19] Over the course of his incarceration there, Weedon's requests to be examined by outside medical staff have been consistently denied.[20] Members of the medical staff have expressed that Weedon "was and is simply malingering and misrepresenting or exaggerating his physical condition."[21] To draw attention to his condition, Weedon has engaged in

---

[10] *Id.* ¶ 46.

[11] *Id.* ¶ 47.

[12] *Id.* ¶ 41.

[13] *Id.* ¶¶ 49, 52.

[14] *Id.*

[15] *Id.* ¶ 50.

[16] *Id.*

[17] *Id.* ¶ 51.

[18] *Id.* ¶ 55.

[19] *See id.* ¶ 3.

[20] *Id.* ¶ 53.

[21] *Id.* ¶ 54.

3

hunger strikes.[22] To penalize him for refusing to eat, several defendants at SCI-Greene, including moving defendant Byunghak Jin, a member of the medical staff, deducted funds from Weedon's inmate account.[23]

Acting *pro se*, Weedon filed his complaint against Godlewski, Canino and SCI-Graterford Superintendent Michael Wenerowicz on December 19, 2013.[24] On May 4, 2015, represented by appointed counsel, he filed an amended complaint, adding multiple SCI-Greene defendants and causes of action.

Jin has moved to transfer this action to the Western District of Pennsylvania, where he resides and SCI-Greene is located. He argues that because Weedon and most of the defendants reside in that district and a substantial portion of Weedon's claims arose at SCI-Greene, the Western District is the more appropriate venue. Weedon counters that his venue choice is entitled to deference and the core issues in this case arose in this district.

**Legal Standard**

A defendant moving for transfer of venue bears the burden of demonstrating that (1) the case could have been brought initially in the proposed transferee forum; (2) the proposed transfer will be more convenient for the parties and witnesses; and (3) the proposed transfer will be in the interest of justice. 28 U.S.C. § 1404(a); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Once the defendant establishes that the action could have been brought in the proposed district, the court must weigh several private and public interest

---

[22] *Id.* ¶ 56.

[23] *Id.* ¶ 60.

[24] By a supplemental statement filed August 8, 2014, he added Damasky as a defendant.

4

factors to determine whether the balance of convenience tips in favor of transfer. *Jumara*, 55 F.3d at 879-80.

Among the factors considered when determining whether transfer is more convenient for the parties and in the interest of justice are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the place where the claim arose; (4) the relative ease of access to the sources of proof; (5) the convenience of the parties as demonstrated by their relative financial status and physical location; (6) the availability of compulsory process for the attendance of witnesses; (7) the convenience of the witnesses; (8) the practical problems that make trial of a case expensive and inefficient; and (9) "public interest" factors, such as congestion of court dockets and the relationship of the jury and the community to the underlying district. *Id.* Depending on the nature and the facts of the case, these factors overlap and are intertwined.

Because the analysis involved is "flexible and individualized," the district court has broad discretion in deciding a motion for transfer of venue. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Despite this wide latitude, a transfer motion is not to be granted without a careful weighing of factors favoring and disfavoring transfer. *See Shutte*, 431 F.2d at 24-25.

**Analysis**

Only if the action could have been brought in the Western District of Pennsylvania can it be transferred there. Thus, the threshold question is whether that district is a proper venue.

There are three possible bases for venue: (1) where all defendants reside in the same state, the district where any defendant resides; (2) the district where a substantial

5

part of the events or omissions giving rise to the claim occurred; and (3) in the case where there is no other district in which the action can be brought, the district where a defendant is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(b).

It is not clear that all of the defendants reside in Pennsylvania. It appears that they do. In that case, this action could be brought in the Western District because at least one of the defendants resides there. Indeed, seven of the eleven defendants reside there.

Even if all the defendants do not reside in Pennsylvania, a substantial part of the events happened in the Western District. Weedon alleges that several officials at SCI-Greene, where he is currently incarcerated, denied him necessary medical treatment and deducted funds from his inmate account as punishment for his refusal to eat. Although Weedon does not specifically allege where his medical treatment occurred, the only medical defendants in this case are associated with SCI-Greene. Therefore, because a substantial part of the events giving rise to his claims occurred at SCI-Greene in the Western District of Pennsylvania and because most of the defendants reside there, Weedon could have brought his claim in that district if he had so chosen.

The inquiry now turns to weighing the private and public interest factors to determine which forum is more convenient for the parties and the witnesses, and will serve the interest of justice.

*(1) The plaintiff's choice of forum*

The plaintiff's choice of forum typically receives "paramount consideration." *Shutte*, 431 F.2d at 25. However, the plaintiff's choice is given less deference where he

6

does not live there and none of the operative facts occurred there. *Buckeye Pennsauken Terminal LLC v. Dominique Trading Corp.*, --- F. Supp. 3d ----, No. 14-4625, 2015 WL 9267386, at *6 (E.D. Pa. Dec. 21, 2015).

Weedon does not currently reside in this district. Although he was incarcerated at SCI-Graterford when he claims Godlewski attacked him, he is no longer residing in this district. At the time he filed this action, Weedon resided at SCI-Greene. He had not yet added the causes of action and the defendants related to his claims arising at SCI-Greene. Therefore, Weedon's choice of forum does not tip the scale.

*(2) The defendant's preferred forum*

Jin prefers the Western District of Pennsylvania because most of the defendants, including himself and the medical defendants, are there. The SCI-Graterford defendants have not appeared. Consequently, their preference is unknown. Thus, Jin's choice of forum favors transfer.

*(3) The place where the claim arose*

Where the claim arose implicates other factors in the analysis. It involves questions of access to proof, choice of law, convenience of the parties and the witnesses, availability of witnesses, and efficiency concerns. Hence, determining the place where the claim occurred will inform the evaluation of these other factors.

The majority of Weedon's claims arose at SCI-Greene. The alleged attack at SCI-Graterford precipitated the events forming the basis for Weedon's claims. However, all medical care or lack of care giving rise to his medical treatment claims occurred in the Western District. So did the retaliation for his hunger strikes. Thus, this factor weighs in favor of transfer.

*(4) The relative ease of access to the sources of proof*

The sources of proof are located in both the Eastern and Western Districts of Pennsylvania. The greater amount of evidence appears to be at SCI-Greene. The significant medical records are there. Thus, this factor slightly favors transfer.

*(5) The convenience of the parties as demonstrated by relative financial status and physical location*

Weedon currently resides in the Western District. Because he is a state prisoner, the DOC will have to transport him as a prisoner from SCI-Greene to the courthouse for trial. Doing so will necessitate providing a mode of transportation and security, all at the expense of the DOC. SCI-Greene is 52 miles from the Western District courthouse in Pittsburgh, and 330 miles from the Eastern District courthouse in Philadelphia.

Seven of the eleven defendants reside and work in the Western District. The remaining four defendants, all employees of the DOC, are in this district. The farther the witnesses will be required to travel to attend trial will increase the DOC's expenses. Litigating the case in the district where most defendants and witnesses are located will reduce those expenses.

Weedon will incur no costs no matter where the case is tried. Due to transportation and security issues, he will actually suffer greater inconvenience if the case is tried in the Eastern District. Hence, this factor weighs in favor of transfer.

*(6) The availability of compulsory process for the attendance of witnesses*

This factor is neutral. A number of witnesses will be required to travel more than 100 miles whether the case remains here or is transferred. There are parties in both districts. It appears all those in this district are DOC employees, making them available wherever the case is tried. *See* Fed. R. Civ. P. 45(c)(1)(B)(i).

*(7) The convenience of the witnesses*

The majority of the witnesses are in the Western District. Although they would be compensated by the DOC, they would be inconvenienced if they were required to travel and lodge in Philadelphia for the duration of the trial. The convenience of the witnesses favors transfer.

*(8) The practical problems that make trial of a case expensive and inefficient*

There will be some inconvenience to at least some parties and witnesses regardless of whether the action is transferred. Weedon would be more inconvenienced by transporting him across the state while in custody. Transporting Weedon from SCI-Greene to Philadelphia would result in greater costs and inefficiency. The security logistics are problematic, requiring more time and expense than a typical transport. This factor also runs in favor of transfer.

*(9) The "public interest" factors*

Jin argues that Pennsylvania has a public interest in having this action tried in the Western District because Pennsylvania Rule of Civil Procedure 1006(a.1) requires medical professional liability claims to be brought in the county in which the cause of action arose. Indeed, the public policy underlying the venue rule is to ensure that malpractice claims are decided by those in the community where the alleged negligent care was rendered. *See, e.g.*, *Velazquez v. UPMC Bedford Mem'l Hosp.*, 328 F. Supp. 2d 549, 563-64 (W.D. Pa. 2004) (citing 42 Pa.C.S. § 5101.1; Pa. R. Civ. P. 1006; *Olshan v. Tenet Health Sys. City Ave., LLC*, 849 A.2d 1214, 1218 (Pa. Super. 2004)). Although the federal court is not bound by state procedural rules, we can consider the rationale behind the rule and the public interest involved.

There is less congestion in the Western District than in the Eastern District.  In the twelve-month period ending June 30, 2015, there were 391 pending cases and 393 weighted filings per judge in the Eastern District, while there were 262 pending cases and 322 weighted filings per judge in the Western District.[25]  These statistics, although not standing alone, favor transfer.

**Conclusion**

The private and public interest factors of convenience and fairness weigh in favor of transferring the case to the Western District of Pennsylvania.  Therefore, in the interest of justice, the motion to transfer venue will be granted.

---

[25] *See* U.S. District Courts Combined Civil and Criminal Federal Court Management Statistics (June 30, 2015), *available at* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-1 (last visited February 11, 2016).